# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MILK STREET CAFE, INC., | ) | |
|     *Plaintiff*, | ) | Civil Action No. |
| v. | ) | |
| CPK MEDIA, LLC, d/b/a MILK STREET KITCHEN, | ) | |
|     *Defendant*. | ) | |

## COMPLAINT

Plaintiff, Milk Street Cafe, Inc. ("Milk Street Cafe"), brings this action to protect the goodwill and trademark rights associated with its successful restaurant and catering business. Founded in 1981, Milk Street Cafe is a Boston icon which has operated continuously for 35 years under its MILK STREET CAFE trademark. Last month, celebrity chef Christopher Kimball ("Kimball") announced his plan to open a kitchen called "Milk Street Kitchen" just a few blocks from Milk Street Cafe in downtown Boston through his company, CPK Media, LLC ("CPK").[1] Kimball's announcement was widely publicized in newspapers and social media outlets. Since this recent announcement, Milk Street Cafe has received numerous job applications for "Milk Street Kitchen" and inquiries from customers believing that Milk Street Cafe is owned by Kimball. Milk Street Cafe's internet and social media presence also has been usurped by the prominence of "Milk Street Kitchen" and the public persona of its founder.

---

[1] "CPK" stands for "Christopher P. Kimball."

Incidents of actual confusion will only escalate when Milk Street Kitchen opens its cooking school, broadcasts its cooking shows and increases its internet and social media presence.

Kimball's use of "Milk Street Kitchen" willfully infringes Milk Street Cafe's trademark rights and is creating a false association between Milk Street Kitchen and Milk Street Cafe. Despite notice of Milk Street Cafe's federally registered trademark for MILK STREET CAFE and the actual confusion which already has developed, and despite repeated pleas by the owner of Milk Street Cafe, Kimball refuses to change the name. Instead, Kimball has begun leveraging his public persona and resources from his "major investors" to usurp Milk Street Cafe's goodwill. Kimball also has threatened to attempt to cancel Milk Street Cafe's federally registered trademark and has filed his own trademark application for "Milk Street Kitchen" that emphasizes "Milk Street" in large bold letters. As a result, Milk Street Cafe hereby complains and alleges as follows:

## **The Parties**

1. Plaintiff Milk Street Cafe is a family owned company founded in 1981 and organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business at 50 Milk Street, Boston, Massachusetts.

2. Milk Street Cafe has owned and operated a restaurant, kitchen and corporate catering business under the name "Milk Street Cafe" for 35 years.

3. Milk Street Cafe is the owner of all right, title and goodwill in the trademark MILK STREET CAFE, including all common law rights and U.S. Trademark Registration No. 4,021,933 for MILK STREET CAFE on the Principal Register for restaurant and catering services with a date of first use at least as early as November 21, 1981 (the "MILK STREET

CAFE Mark"). A copy of the Certificate of Registration for the MILK STREET CAFE Mark is attached as **Exhibit A**.

4. Upon information and belief, CPK, doing business as "Milk Street Kitchen," is a Delaware limited liability company with its principal place of business at 23 Buckingham Street, Cambridge, Massachusetts, and has entered into a lease for space located at 177 Milk Street, Boston, Massachusetts. Upon further information and belief, the name "CPK" stands for "Christopher P. Kimball."

5. Upon information and belief, Christopher P. Kimball, the former host of the nationally syndicated television shows *America's Test Kitchen* and *Cook's Country*, is the founder and President of CPK. Upon further information and belief, Mr. Kimball's home address in Cambridge, Massachusetts is the principal place of business of CPK as listed in CPK's corporate records filed with the Secretary of the Commonwealth of Massachusetts. Kimball and CPK are collectively referred to herein as "Kimball."

## Nature of Complaint

6. This is an action for trademark infringement and unfair competition, whereby Milk Street Cafe is seeking injunctive relief and damages arising out of Kimball's willful infringement of Milk Street Cafe's rights in the MILK STREET CAFE Mark in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and Mass. Gen. L. c. 93A.

## Jurisdiction and Venue

7. This Court has jurisdiction over the subject matter of Milk Street Cafe's claims pursuant to 28 U.S.C. §§ 1331 and 1338, as well as 15 U.S.C. §§ 1116 and 1121. This Court has supplemental jurisdiction over Milk Street Cafe's state law claim pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Kimball pursuant to M.G.L. c. 223A, §§ 2 and 3 because it is registered to do business with the Secretary of the Commonwealth of Massachusetts, has its principal place of business in the Commonwealth of Massachusetts, transacts business in the Commonwealth of Massachusetts, has caused tortious injury in the Commonwealth of Massachusetts, and has an interest in, uses or possesses real property in the Commonwealth of Massachusetts.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all parties reside in the Commonwealth of Massachusetts and a substantial part of the events or omissions giving rise to Milk Street Cafe's claims occurred in this judicial district.

### General Allegations

#### MILK STREET CAFE

10. Milk Street Cafe was founded in 1981 by Marc Epstein. Mr. Epstein runs the day-to-day operations of Milk Street Cafe with his wife and daughter, and a team of approximately 75 employees.

11. Originally offering only vegetarian options, the Milk Street Cafe has grown into a full service kitchen and premier corporate catering business. The Milk Street Cafe is known for its unmatched commitment to delicious, healthy and wholesome foods prepared in accordance with the highest culinary standards, featuring regional and international dishes that appeal to the general public.

12. The Milk Street Cafe operates uniquely out of three kitchens occupying 10,000 square feet: a vegetarian kitchen; a kitchen that prepares beef and chicken; and a pareve (or neutral) kitchen that does not prepare any meat or dairy products. As part of its marketing efforts, Milk Street Cafe promotes advertises its services as being "from our kitchens to your plate."

13. In 2011, Milk Street Cafe opened another location on Wall Street in New York City also named "Milk Street Cafe," which received significant media attention and had lines out the door. CNBC devoted an entire segment to the opening of the Milk Street Cafe in New York City entitled "Feeding Wall Street: Milk Street Cafe," featuring images of and discussions about the offerings prepared in Milk Street Cafe's kitchens, and interviewed Marc Epstein. http://video.cnbc.com/gallery/?video=3000029155.

14. Milk Street Cafe opened additional locations over the years, including: Kendall Square, Cambridge; Longwood Galleria, Boston; and Post Office Square, Boston. All of these restaurants were named "Milk Street Cafe" despite not being on Milk Street.

15. Milk Street Cafe currently employs 75 members of its team.

16. Milk Street Cafe has been featured in newspapers, magazines, television, cooking and restaurant magazines, recipe books, and other media across the country, including USA Today, New York Times, Boston Globe, Entrepreneur, Boston Business Journal, Restaurant Hospitality Magazine, and CNBC.

17. Since 2009, Milk Street Cafe has been consistently ranked by the Boston Business Journal as among the largest caterers in Massachusetts, and was ranked No. 1 in 2010 and 2012 based on the number of events catered. Milk Street Cafe prepares over a hundred corporate catering orders each day.

18. For 35 years, the Milk Street Cafe's commitment to quality and loyalty to the community has garnered an impeccable reputation of excellence. At the end of each day, Milk Street Cafe donates suitable leftover food to the Boston Food Bank and local soup kitchens.

19. In 2011, Marc Epstein was named the Massachusetts Small Business Person of the Year by the U.S. Small Business Administration for the growth and success of his food and cooking business and commitment to the community under the MILK STREET CAFE Mark.

20. In addition to unsolicited media attention promoting the goods and services offered under the MILK STREET CAFE Mark, Milk Street Cafe has devoted significant resources to promoting its goods and services in the field of food and cooking under the MILK STREET CAFE Mark. The MILK STREET CAFE Mark is displayed predominantly on its website and social media pages, menus, fliers, advertisements, and a fleet of nine delivery vans. Since 2006, Milk Street Cafe has invested more than $2 million in marketing and promotional efforts featuring its MILK STREET CAFE Mark in connection with its food and cooking services.

21. Milk Street Cafe is the owner of the domain names milkstreet.com and milkstreetcafe.com, which direct customers and potential customers to the Milk Street Cafe website. The Milk Street Cafe website prominently displays the MILK STREET CAFE Mark.

22. The Milk Street Cafe utilizes social media to further promote the goodwill associated with its MILK STREET CAFE Mark, including Facebook and LinkedIn pages named "Milk Street Cafe" that prominently display the MILK STREET CAFE Mark, and a Twitter account named "Milk Street Cafe."

23. Due to 35 years of earning a reputation for quality food and cooking services, customers often refer to the Milk Street Cafe as simply "Milk Street."

### KIMBALL ANNOUNCES "MILK STREET KITCHEN"

24. Kimball is a celebrity in the field of food and cooking. Upon information and belief, Kimball was the founder of *Cook's Magazine*, *Cook's Illustrated*, *Cook's Country* magazine, authored several cooking-related books, was the host and executive producer of the nationally

syndicated television shows *America's Test Kitchen* and *Cook's Country*, and was the host of the nationally broadcast radio program *America's Test Kitchen Radio.* According to the New York Times, Kimball is worth "tens of millions of dollars."

25. On or about May 31, 2016, the New York Times reported that Kimball would be launching a new business venture located at 177 Milk Street in Boston under the name "Milk Street Kitchen."

26. On or about June 1, 2016, Kimball issued a press release announcing the new business venture located at 177 Milk Street in Boston, called "Milk Street Kitchen." A copy of the June 1, 2016 Press Release is attached herewith as **Exhibit B**.

27. "Milk Street Kitchen" will be located a few blocks away from the Milk Street Cafe.

28. On or about June 1, 2016, Kimball launched a website, www.milkstreetkitchen.com, which described "Milk Street Kitchen" as "a place—177 Milk Street—in downtown Boston. It's also a cooking school, a kitchen, the set of our new TV show, and the place where we create the recipes that we call 'The New Home Cooking,'" which will emphasize "a new approach to cooking. . ." Kimball has also announced that, "[o]ver the next year, Milk Street Kitchen will roll out a public television cooking show, a retail cooking school at 177 Milk St., Boston, magazines, cookbooks, and a new digital platform." Kimball also announced plans to launch "Milk Street Television."

29. Kimball promotes "Milk Street Kitchen" on its Twitter account called "Milk Street" and Facebook page called "Milk Street Kitchen."

30. Like the Milk Street Cafe, Kimball often refers to "Milk Street Kitchen" simply as "Milk Street." For example, Kimball's June 1, 2016 press release makes references to the new venture simply as "Milk Street," the "Milk Street Kitchen" website currently encourages customers to

7
8770743.1

sign up to receive "a personal letter from Milk Street" (http://www.milkstreetkitchen.com/faqs/), and Kimball's Twitter account for "Milk Street Kitchen" is called "Milk Street." Additionally, Kimball's Facebook page for "Milk Street Kitchen" refers to its food and cooking projects as "Milk Street" without the word "kitchen," such as "milkstreetrecipes," "milkstreettv" and "Milk Street Television."

31. Kimball's press releases and social media pages display a "Milk Street Kitchen" logo with the predominant term "Milk Street" in large, all capitalized bold letters with the word "kitchen" in much smaller font underneath:

 

32. Kimball's Twitter and Facebook accounts promote "Milk Street Kitchen" simply as "Milk Street." Kimball posted on its "Milk Street" Twitter account a June 29, 2016 message from Christopher Kimball promoting the release of the "Milk Street Newsletter" without any reference to "kitchen":



33. Milk Street Cafe likewise circulated a newsletter featuring food and cooking called "The Milk Street News" and engaged in promotion efforts featuring "Milk Street," such as its "Milk Street Money" and "Got Milk Street" campaigns.

8

34. Kimball intentionally associates "Milk Street Kitchen" with his well-known public persona in its advertising and marketing efforts.

35. Customers and potential customers are likely confused and going to be confused as to the source and affiliation of goods and services offered by Milk Street Cafe and "Milk Street Kitchen." Customers are likely to believe that food served by Milk Street Cafe is prepared in or according to recipes and techniques featured by "Milk Street Kitchen" and/or that the Milk Street Cafe is affiliated with or owned by "Milk Street Kitchen."

36. The Milk Street Cafe and "Milk Street Kitchen" are both offering goods and services in the field of food and cooking. The Milk Street Cafe and "Milk Street Kitchen" are located a few blocks from each other. The Milk Street Cafe and "Milk Street Kitchen" both begin with the predominant "Milk Street" term followed by "Cafe" and "Kitchen," respectively, both of which are synonymous with food and cooking. Milk Street Cafe and "Milk Street Kitchen" both market their respective businesses by highlighting the same "Milk Street" wording and are often referred to as "Milk Street" by consumers and the media.

37. Customers and potential customers are likely to believe that the food and cooking services offered by Milk Street Cafe and "Milk Street Kitchen" come from the same source, particularly because many food and cooking businesses that feature the word "kitchen" in their name also offer restaurant and cafe services, cookbooks and cooking-related merchandise, such as Legal Test Kitchen and Stonewall Kitchen. Additionally, celebrity chefs like Kimball often offer restaurant services, cooking shows and cookbooks, such as Wolfgang Puck and Emeril Lagasse.

38. Since Kimball's recent announcement of the launch of "Milk Street Kitchen," Milk Street Cafe has already received numerous inquiries from third parties as to its affiliation

with Kimball, including a customer that asked if Milk Street Cafe is owned by "the chef on channel 2," and has received numerous job applications intended for "Milk Street Kitchen." Moreover, due to Kimball's celebrity status, "Milk Street Kitchen" has dominated the restaurant news and already negatively impacted Milk Street Cafe's online search optimization results.

### KIMBALL REFUSES TO CEASE INFRINGING THE MILK STREET CAFE MARK

39. On June 3, 2016, within days of the announcement of "Milk Street Kitchen," Milk Street Cafe, through its counsel, sent Kimball a letter wishing him success on his new business venture, but requesting that the "Milk Street Kitchen" name be changed to something that is not confusingly similar to the MILK STREET CAFE Mark. Milk Street Cafe attached a copy of the registration for the MILK STREET CAFE Mark to its June 3, 2016 letter and informed Kimball of instances of actual confusion already occurring.

40. On June 8, 2016, the owner of Milk Street Cafe sent a personal letter to Kimball. In this letter, Marc Epstein invited Kimball to lunch and a tour of the kitchens at the Milk Street Cafe to discuss Milk Street Cafe's concerns with the decision to name the new business "Milk Street Kitchen" that would operate just a few blocks away from the Milk Street Cafe. A copy of Marc Epstein's letter dated June 8, 2016 to Mr. Kimball is attached herewith as **Exhibit C**. In this letter, Marc Epstein again reiterated his request that Kimball change its name in order to avoid consumer confusion.

41. On June 10, 2016, Marc Epstein and Kimball met at the Milk Street Cafe to discuss their respective businesses. Mr. Kimball stated that CPK would continue using "Milk Street Kitchen" despite Milk Street Cafe's MILK STREET CAFE Mark. Marc Epstein again reiterated his request that Kimball change its name, but with the goal of avoiding litigation,

10
8770743.1

asked Kimball to consider the matter carefully and provide a response by Tuesday, June 14, 2016.

42. Rather than provide Epstein with the courtesy of a personal response, Kimball hired the New York City offices of Skadden, Arps, Slate, Meagher & Flom LLP to send Milk Street Cafe's counsel a 14-page legal memorandum that made no reference to Epstein's June 9 letter or his June 10 meeting with Kimball, threatened to engage in proceedings to cancel the MILK STREET CAFE Mark, and filed a trademark application for the "Milk Street Kitchen" logo that again featured the phrase "Milk Street" in large, bold capitalized letters:



43. In a letter dated June 29, 2016, Epstein again wrote to Kimball, citing to the additional instances of actual confusion occurring since their meeting and asking again that Kimball change the name of the business. A true and correct copy of Epstein's letter dated June 29, 2016 to Kimball is attached herewith as **Exhibit D**.

## COUNT I
## INFRINGEMENT OF FEDERAL TRADEMARK REGISTRATION NO. 4,021,933
## (15 U.S.C. § 1114(a))

44. Milk Street Cafe realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

45. Milk Street Cafe is the owner of all substantial rights and goodwill in the valid and enforceable U.S. Trademark Registration No. 4,021,933 for MILK STREET CAFE in Class 43 for "[r]estaurant and catering services," and claims a date of first use at least as early as November 21, 1981. **Exhibit A**.

46. The MILK STREET CAFE Mark is distinctive for restaurant and catering services.

47. Milk Street Cafe has continuously used the MILK STREET CAFE Mark in commerce.

48. As a result of its continued use, the MILK STREET CAFE Mark has become associated in the minds of consumers as identifying Milk Street Cafe as the source of quality restaurant and catering services.

49. Kimball has been advertising, marketing and promoting a new business enterprise located just a few blocks from Milk Street Cafe under the name "Milk Street Kitchen," which is confusingly similar to the MILK STREET CAFE Mark, without Milk Street Cafe's authorization or consent.

50. Kimball's unauthorized use of "Milk Street Kitchen" to advertise and offer to sell goods and services in the field of food and cooking is likely to cause confusion, or to cause mistake, as to the source of restaurant and catering services offered under the MILK STREET CAFE Mark, in violation of 15 U.S.C. § 1114(a).

51. As a result of Kimball's efforts to directly link "Milk Street Kitchen" with Mr. Kimball's well-known public persona," Kimball's unauthorized use of "Milk Street Kitchen" is likely to cause reverse confusion as to the source of services offered under the MILK STREET CAFE Mark.

52. Kimball's infringing activities have damaged Milk Street Cafe and will continue to cause harm to Milk Street Cafe unless enjoined by this Court.

8770743.1

53. Upon information and belief, Kimball will continue to infringe the MILK STREET CAFE Mark, causing irreparable harm to Milk Street Cafe, unless enjoined by this Court.

54. Upon information and belief, Kimball had knowledge of, or at least should have reasonably known of the existence of, the MILK STREET CAFE Mark before deciding to name its business "Milk Street Kitchen."

55. Prior to filing this Complaint, Milk Street Cafe gave Kimball actual notice of the MILK STREET CAFE Mark and, despite such notice, Kimball has continued to engage in acts of infringement of the MILK STREET CAFE Mark.

56. Kimball's past and continued acts of infringement are willful and deliberate.

## COUNT II
## TRADEMARK INFRINGMENT, FALSE ASSOCIATION AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

57. Milk Street Cafe realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

58. Milk Street Cafe owns all right and title to the MILK STREET CAFE Mark.

59. The MILK STREET CAFE Mark has been continuously used in commerce since at least as early as November 21, 1981 in connection with food and cooking services.

60. Milk Street Cafe's use of the MILK STREET CAFE Mark is distinctive for goods and services in the field of food and cooking.

61. The MILK STREET CAFE Mark has become associated in the minds of consumers as identifying Milk Street Cafe as the source of quality goods and services in the field of food and cooking.

62. Milk Street Cafe owns a federal trademark registration for MILK STREET CAFE.  **Exhibit A**.

63. Milk Street Cafe owns all common law rights in the term "Milk Street Cafe" for goods and services in the field of food and cooking.

64. Kimball's use of "Milk Street Kitchen" is confusingly similar to Milk Street Cafe's MILK STREET CAFE Mark.

65. Kimball's use of "Milk Street Kitchen," which is confusingly similar to the MILK STREET CAFE Mark, without Milk Street Cafe's authorization or consent has caused and is likely to cause confusion, or to cause mistake, or to deceive consumers as to an affiliation, connection or association of Milk Street Cafe with Kimball, or as to the origin, sponsorship, or approval of Kimball's goods and services in violation of 15 U.S.C. 1125(a).

66. Due to Mr. Kimball's celebrity status, Kimbal's use of "Milk Street Kitchen" is likely to cause reverse confusion such that consumers are likely to believe that Milk Street Cafe is affiliated with and offers goods and services prepared by Kimball, or according to Kimball's recipes and techniques.

67. Kimball's violations of 15 U.S.C § 1125(a) have damaged Milk Street Cafe and will continue to cause harm to Milk Street Cafe unless enjoined by this Court.

68. Upon information and belief, Kimball had knowledge of, or at least should have reasonably known of the existence of, the MILK STREET CAFE Mark before deciding to name its business "Milk Street Kitchen."

69. Prior to filing this Complaint, Milk Street Cafe gave Kimball actual notice of the MILK STREET CAFE Mark and, despite such notice, has continued to engage in acts of infringement of the MILK STREET CAFE Mark.

70. Kimball's past and continued acts of infringement are deliberate and willful.

## COUNT III
## VIOLATION OF M.G.L. c. 93A

71. Milk Street Cafe realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

72. Kimball's foregoing acts, pattern and practices of trademark infringement constitute unfair competition and unfair and deceptive acts and practices under M.G.L. c. 93A.

73. Kimball knew or should have known that its acts, pattern and practices were in violation of M.G.L. c. 93A and the Lanham Act, which are designed to protect the public from unfair and deceptive acts or practices.

74. Kimball's acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts.

75. Kimball's acts and practices in violation of G.L. c. 93A have damaged Milk Street Cafe.

## PRAYER FOR RELIEF

WHEREFORE, Milk Street Cafe requests judgment against Kimball and respectfully prays for relief for all counts asserted in this Complaint as follows:

(a) A judgment that Kimball's use of "Milk Street Kitchen" is confusingly similar to the MILK STREET CAFE Mark;

(b) A judgment that Kimball has infringed the MILK STREET CAFE Registration in violation of 15 U.S.C. § 1114(a);

(c) A judgment that CPK has infringed the MILK STREET CAFE Mark in violation of 15 U.S.C. § 1125(a);

(d) A judgment that Kimball's acts and practices constitute unfair competition and unfair or deceptive practices, and were knowing and willful in violation of M.G.L. c. 93A, §§ 2 and 11;

(e) An injunction pursuant to 15 U.S.C. § 1116 preliminarily and permanently enjoining Kimball, or anyone acting in concert or cooperation with Kimball, including its President Christopher Kimball, from engaging in any further infringement of the MILK STREET CAFE Mark;

(f) An order directing Kimball to deliver up to Milk Street Cafe for destruction any documents, labels, signs, prints, packages, wrappers, receptacles, advertisements or other articles in Kimball's possession or under Kimball's control bearing the MILK STREET CAFE Mark or any name confusingly similar to the MILK STREET CAFE Mark, including "Milk Street Kitchen," pursuant to 15 U.S.C. § 1118;

(g) An order directing Kimball to transfer ownership and control of all social media pages and tools in its control displaying the "Milk Street Kitchen" name, including but not limited to Facebook, LinkedIn and Twitter accounts, as well as the domain name milkstreetkitchen.com, to Milk Street Cafe;

(h) A finding that Kimball's infringement of the MILK STREET CAFE Mark was willful and deliberate and that this case is exceptional pursuant to 15 U.S.C. § 1117;

(i) An award of Kimball's profits, damages and costs of this litigation, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

(j) an award of treble damages, attorneys' fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b) and M.G.L. c. 93A, § 11; and

(k) such other or further relief as the Court deems just and proper.

8770743.1

**PLAINTIFF MILK STREET CAFE, INC. REQUESTS A TRIAL BY JURY FOR ALL MATTERS SO TRIABLE**

Respectfully submitted,

MILK STREET CAFE, INC.

By its attorneys,

Dated: July 6, 2016

*/s/ Jennifer B. Furey*
Jennifer B. Furey (BBO No. 634174)
Andrew T. O'Connor (BBO No. 664811)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, Massachusetts 02110
P: (617) 482-1776
F: (617) 574-4112
*jfurey@goulstonstorrs.com*
*aoconnor@goulstonstorrs.com*