UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MILK STREET CAFE, INC.,            :

        Plaintiff,            :    Civil Action
                                         No. 16-11416-DJC
       v.                   :

CPK MEDIA, LLC, d/b/a        :
MILK STREET KITCHEN,
                                :
       Defendant.
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CPK MEDIA, LLC,                  :

        Counterclaim-Plaintiff,   :

       v.                   :

MILK STREET CAFE, INC.,          :

        Counterclaim-Defendant.   :

                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MILK STREET CAFE, INC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE TESTIMONY AND REPORT OF RENE BEFURT, PH.D.**

INTRODUCTION

Defendant CPK Media, LLC ("CPK") submitted the Expert Report of Brian Sowers ("Sowers Report"), which describes a purported secondary meaning survey, and has relied upon, and clearly intends to rely upon, the Sowers Report and survey extensively in this matter. However, Mr. Sowers' survey suffers from two fatal flaws that render its results unreliable and irrelevant: (1) it surveyed the wrong people and (2) its control stimulus was improper.  In order to assist the Court in understanding these flaws, plaintiff Milk Street Cafe, Inc. ("MSC") submitted the Expert Rebuttal Report of Rene Befurt, Ph.D. ("Befurt Report").  Dr. Befurt, who has extensive academic and professional experience in designing consumer surveys, including consumer surveys in the marketing and branding fields, opines in his report that Mr. Sowers' survey results are not reliable because the geographic scope of the panels of respondents is too broad and because the use of "Main Street Cafe" as a control stimulus improperly causes an artificial reduction in the net secondary meaning percentage attributed to the Main Street Cafe trademark.  Dr. Befurt clearly is qualified to offer the opinions included in his report, and his opinions (1) are based upon sufficient facts or data; (2) are the product of reliable principles and methods; and (3) are based on Dr. Befurt reliably applying the principals and methods to the facts of this case.  Therefore, the motion to strike Dr. Befurt's report and testimony should be denied.

ARGUMENT

I.   Dr. Befurt Is Qualified to Offer An Opinion in This Case

Even a cursory review of Dr. Befurt's Report and curriculum vitae confirms that he is more than qualified to offer an opinion criticizing Mr. Sowers' survey.  Dr. Befurt has an M.B.A. and a Diplom-Kaufmann (M.B.A. Equivalent), both with a focus on marketing and market

1

research.  *See* Befurt Report, Exhibit 1 to Declaration of Christopher M. Iaquinto, at p. 3.  He received his Ph.D. in Business Administration with a focus on marketing, specializing in market metrics and measurement.  *Id.*  He was a visiting researcher in the Marketing Group at the MIT Sloan School of Management from 2006-2008.  *Id.*

During his work at Analysis Group, Dr. Befurt has consulted to commercial entities involved in false advertising, intellectual property, and trademark litigation, including confusion, reverse confusion, and secondary meaning.  *Id.*  In the course of that consulting work he has developed numerous consumer surveys.  *Id.* at p. A-2.  He has been retained as an expert witness in four matters involving the development or rebuttal of consumer surveys.  *Id.* at A-1 – A-2.  He has assisted an expert in a litigation matter involving a secondary meaning survey.  *See* Transcript of Deposition of Rene Befurt, Exhibit 3 to Declaration of Christopher M. Iaquinto, at p. 21. As part of his academic work he has conducted research on secondary meaning surveys.  *Id.* at 28.

Therefore, there can be little doubt that Dr. Befurt possesses the necessary "knowledge, skill, experience, training or education" to offer his opinions in this case.  Fed. R. Evid. 702. CPK makes much of the fact that Dr. Befurt has never previously been retained as an expert relating to secondary meaning surveys.  CPK Memo., p. 4.  But CPK does not cite to any law requiring such specific expert experience, nor could it.  Dr. Befurt has extensive experience designing consumer surveys, has researched secondary meaning surveys and assisted another expert rebut a secondary meaning survey.  The fact that this is the first time he has been retained as an expert to rebut a secondary meaning survey does not mean that he is unqualified to do so. The case law cited by CPK in support of its position is unhelpful because in those cases the expert lacked qualifications in the field for which he or she was offering an opinion.  Here Dr.

Befurt's knowledge, skill, experience, training and education clearly establish his qualifications to offer an opinion as to Mr. Sowers' survey.

CPK criticizes Dr. Befurt for being unable at deposition to identify the difference between "secondary meaning" and "brand awareness." CPK Memo., p. 4. But Mr. Sowers' survey, while termed a secondary meaning survey, actually attempted to quantify the level of awareness of the Milk Street Cafe brand. Specifically, the survey asked respondents "Do you associate the phrase Milk Street Cafe with the restaurant and catering services of (1) one particular company; (2) more than one company; (3) no particular company; or (4) don't know/unsure." *See* Sowers Report, Exhibit 2 to Declaration of Christopher M. Iaquinto, at p. 17. Thus, Dr. Befurt was merely reflecting the subject matter of Sowers' survey question when he testified at deposition "[a]nd I haven't considered the equality of these two expressions (secondary meaning and brand awareness) carefully because I focus on recognition of a brand." Ex. 3, Befurt Dep. at p. 157.

For all of the reasons set forth above, Dr. Befurt is more than qualified to offer his opinions in the case, and CPK's motion to strike should therefore be denied.

II. Dr. Befurt's Testimony Satisfies the *Daubert* Standard

   A. Dr. Befurt's Opinion That the Sowers Survey Sample Universe Is Improper Is Based on the Correct Methodology

CPK asserts that Dr. Befurt's opinion that the Sowers survey sample is too geographically broad is based on an incorrect methodology. As Professor McCarthy has stated, the geographic region of the sample must consist of potential past and prospective customers who are "exposed to this designation used as a trademark." *See* McCarthy, § 15:52. In fact that is precisely what Dr. Befurt focused on in rejecting Mr. Sowers' vast geographic sample universe, which is unsupported by the facts in the record.

3

Marc Epstein, MSC's president, testified that the majority of MSC's restaurant customers live within walking distance of the cafe. Befurt Report, Ex. 1, at p. 7. That makes sense because the restaurant is open between 7 am and 3 pm Monday through Friday. *Id.* Yet, Sowers' survey collected *no information* as to where restaurant respondents worked. *Id.* For all Mr. Sowers knows, the restaurant respondents work dozens or more miles from the Milk Street Cafe and would have no opportunity to be exposed to the cafe's trademark between 7 am and 3 pm Monday through Friday. Thus, Dr. Befurt used the correct methodology in concluding that such respondents cannot reasonably be considered past or potential customers of Milk Street Cafe's restaurant services, rendering their responses to the survey completely irrelevant to the issue of secondary meaning.

Similarly, the relevant facts confirm that Sowers' sample of past or potential catering customers also is flawed. According to Mr. Sowers, respondents qualified as past or potential customers of Milk Street Cafe's corporate catering services "if they work within 50 miles of the Cafe *and* have at least some responsibility for the hiring, ordering, or choosing [of] catering services at their current place of employment." Ex. 2, at p. 7. Mr. Epstein testified that 98-94% of Milk Street Cafe's catering orders are delivered within the Route 128 belt, which extends to between 9 and 12 miles from Boston, and 40% of such orders are delivered by foot within walking distance of Milk Street Cafe. Ex. 1, at p. 9. Thus, again Dr. Befurt used the correct methodology in opining that including as respondents people who work up to 40 miles beyond where the cafe makes 98-94% of its catering deliveries, with no further data indicating why these respondents legitimately are within Milk Street Cafe's target population of potential catering customers, renders the results of the Sowers survey completely unreliable. Exh. 1, at p. 10.

The case law relied upon by CPK does not support its argument. In reaching his opinions Dr. Befurt did not focus on geographic regions in which MSC's sales are greatest (*Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439 at *9 (C.D. Cal. 2009)), and he do not focus on areas where MSC had its strongest sales. *Spraying Sys. Co. v. Delavan, Inc.*, 762 F. Supp. 772, 779 n.7 (N.D. Ill. 1991). Rather, Dr. Befurt focused on the region where MSC made nearly all of its sales (98-94%) and formed a reliable opinion that a geographic region that includes people located up to 40 miles away from virtually all of those sales is improper.[1]

CPK next challenges Dr. Befurt because he does not identify what the proper sample universe should be. CPK Memo., at p. 7. But CPK fails to cite to any cases that support its position that an expert criticizing a survey's geographic scope must be able to supply the proper geographic scope. In fact, there is no such case law, and the tenet defies logic. Dr. Befurt was not retained to design his own survey. He was retained to use his education, training and experience to analyze Sowers' survey in light of the relevant facts and to determine whether the survey is reliable. Dr. Befurt's opinion that Sowers' survey is unreliable does not require that Dr. Befurt design a reliable survey to replace it.[2]

    B. The Adjustments to Sowers' Analysis Performed by Dr. Befurt Are Reliable and <u>Relevant</u>.

Dr. Befurt made adjustments to Sowers' analysis to correct for his incorrect samples and flawed control measure, and those adjusted numbers support a determination that the MILK STREET CAFE Mark has in fact achieved secondary meaning. For instance, continuing to use Sowers' flawed control stimulus but reducing the panel of restaurant respondents by geography

---

[1] CPK criticizes Dr. Befurt for not knowing MSC's channels of trade and not knowing where MSC markets its restaurant and catering services under its trademark. CPK Memo., at p. 5. Yet Sowers does not know any of this information either.

[2] To some degree, Dr. Befurt's adjustments to Sowers' survey results discussed in section B below is an attempt to do this.

results in a net secondary meaning percentage for the MILK STREET CAFE Mark of 58% for restaurant respondents who live within five (5) miles of the cafe, and 42% for restaurant respondents who live within ten (10) miles of the cafe. Exh. 1, at pp. 13-14. Using a "narrative control" that examines the respondents' open ended answers to determine whether those answers suggest that the respondents may have any familiarity with the Milk Street Cafe, Dr. Befurt found a net secondary meaning percentage of 45% for the MILK STREET CAFE Mark among restaurant respondents who live within five (5) miles of the cafe, and 28% among respondents who live within ten (10) miles of the cafe. *Id.* at p. 16.

There is nothing unreliable or improper about this analysis performed by Dr. Befurt. It is certainly reasonable to conclude that people who live 5-10 miles from the cafe are more likely to work near the cafe and, thus, are more likely to be exposed to the cafe's mark and restaurant offerings from 7 am – 3 pm Monday through Friday than are people who live up to 50 miles from the cafe. Dr. Befurt's narrative control is nothing more than an analysis of the open-ended answers recorded by Sowers' survey. To the extent that CPK charges that such an analysis is unreliable or improper, those defects must be based on the inherent flaws in Mr. Sowers' survey.

Dr. Befurt performed a similar analysis for corporate catering customers, and those results also support a determination that the mark has achieved secondary meaning. Using Sowers' control group resulted in a net secondary meaning percentage of 56% for the mark among catering respondents who work within five (5) miles of the cafe, and 54% among respondents who work within ten (10) miles of the cafe. *Id.* at p. 18. Using, instead, the narrative control, Dr. Befurt calculated a net secondary meaning percentage of 46% for the mark among catering respondents who work within five (5) miles of the cafe, and 38% among catering

6

respondents who work within ten (10) miles of the cafe. *Id.* at p. 19. Again, there is nothing improper or unreliable about these simple, reasonable adjustments to Sowers' flawed survey.

CPK asserts that Dr. Befurt's reasoning in adjusting Sowers' survey results is circular and flawed. That critique makes no sense. All Dr. Befurt did was (1) analyze Sowers' data using more appropriate and factually-supportable geographic regions; and (2) in some of his analyses use a narrative control that examines the open-ended answers given by the respondents instead of simply using the flawed "Main Street Cafe" control stimulus. Other than placing conclusory labels on Dr. Befurt's analysis, CPK offers no reasoned argument as to why that analysis is unreliable or otherwise inadmissible.

CPK's argument that the sample sizes for Dr. Befurt's analyses is too small to establish secondary meaning misses the mark. Dr. Befurt's analyses serve as evidence that the flaws in Sowers' survey lead to unreliable results that Sowers then uses to opine that MSC's trademark lacks secondary meaning. Dr. Befurt's reasonable and supportable adjustments to Sowers' survey generate results that prove the failings of Sowers' survey, as well as his ultimate conclusion as to secondary meaning.

Finally, CPK alleges that Dr. Befurt's analysis of the adjustments he made to Sowers' survey is unreliable because Dr. Befurt did not conduct any tests to validate his results. CPK Memo., at p. 11. Dr. Befurt's analysis is based on Mr. Sowers' data, which Mr. Sowers purportedly tested for validity. CPK does not explain why Dr. Befurt would have to independently test Mr. Sowers' data.

.

## CONCLUSION

For the reasons set forth above, plaintiff Milk Street Cafe, Inc. respectfully requests that this Court deny defendant CPK Media, LLC's motion to strike the testimony and report of Rene Befurt, Ph.D.

Dated:   July 8, 2017                                                Respectfully submitted,
        Boston, Massachusetts
                                      MILK STREET CAFE, INC.,
                                      By its attorneys,

                                      /s/ Thomas E. Kenney_____
                                      Thomas E. Kenney  (BBO #561590)
                                      Pierce & Mandell, P.C.
                                      11 Beacon Street, Suite 800
                                      Boston, MA 02108
                                      617-720-2444
                                      617-720-3693 (fax)
                                      tom@piercemandell.com
                                      www.piercemandell.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated July 8, 2017.


Dated:   July 8, 2017                       /s/ Thomas E. Kenney_____
                                                  Thomas E. Kenney